UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONA NAJAFI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL R. POMPEO, et al.,<br><br>Defendants. | Case No. 19-cv-05782-KAW<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION; TERMINATING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 9, 32 |

On September 15, 2019, Plaintiffs filed the instant suit against Defendants, challenging Defendants' alleged "withholding of adjudications of case-by-case waivers of Presidential Proclamation 9645, Enhancing Vetting Capabilities and Processes for Deterring Attempted Entry into the United States by Terrorists or Other Public-Safety Threats." (Compl. ¶ 1, Dkt. No. 1.)

Pending before the Court is Plaintiffs' motion for a preliminary injunction, in which Plaintiffs seek a court order requiring Defendants to complete the adjudication of the waivers within fifteen days. (Pls.' Mot. for Prelim. Inj., Dkt. No. 9.) Having considered the parties' filings, the relevant legal authorities, and the arguments made at the December 5, 2019 motion hearing, the Court DENIES Plaintiffs' motion for a preliminary injunction.[1]

## I. BACKGROUND

Plaintiffs are U.S. citizens and lawful permanent residents ("Petitioner Plaintiffs") and their Iranian national relatives or fiancées who are visa applicants ("Beneficiary Plaintiffs"). (Compl. ¶ 2.) Beneficiary Plaintiffs have fulfilled the requirements to obtain family-based or fiancée-based visas; their applications, however, have been refused pursuant to Presidential

---

[1] As stated during the hearing, the Court also denies Plaintiff's December 2, 2019 ex parte application to file supplemental evidence. (Dkt. No. 38.)

Proclamation 9645 ("PP 9645"). (Compl. ¶ 3.)

PP 9645 prohibits the entry of immigrants and non-immigrants from Iran and other countries. PP 9645 § 2(b). PP 9645 is based on the Secretary of Homeland Security's finding that these countries "continue to have 'inadequate' identity-management protocols, information-sharing practices, and risk factors . . . such that entry restrictions and limitations are recommended . . . ." *Id.* § 1(g). PP 9645, however, provides: "a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited . . . ." *Id.* § 3(c). A waiver may be granted if the "foreign national demonstrates to the consular officer's or CBP official's satisfaction that: (A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (c) entry would be in the national interest." *Id.* § 3(c)(i).

The Secretary of State and Secretary of Homeland Security are responsible for "coordinat[ing] to adopt guidance addressing the circumstances in which waivers may be appropriate . . . ." PP 9645 § 3(c). Such guidance includes standards, policies, and procedures for "determining whether the entry of a foreign national would not pose a threat to the national security or public safety of the United States," "addressing and managing the risks of making such a determination in light of the inadequacies in information sharing, identity management, and other potential dangers posed by the nationals of individual countries subject to" PP 9645, and "assessing whether the United States has access, at the time of the waiver determination, to sufficient information about the foreign national to determine whether entry would satisfy" the national security requirement. *Id.* §§ 3(c)(ii)(A), (C), (D).

In adjudicating waivers, the consular office first determines whether the applicant is eligible for a visa, such as a I-130 (Petitions for Alien Relative) or I-129f (Petition for Alien Fiancé(e)) visa. (*See* Pls.' Mot. for Prelim. Inj., Exh. 80 at 1-2.) The processing of visa applicants include screening of fingerprints and biometric information through the Consular Lookout and Support System ("CLASS") database, and screening through IDENT, the FBI Next Generation

2

Identification database, and the Department of State's Facial Recognition database. (*Id.* at 2.) Once an applicant is determined to be eligible for a visa, the consular officer then automatically considers the applicant for a waiver based on PP 9645's three-part test. (*See* Pls.' Mot. for Prelim. Inj., Exh. 82 at 1.)

Plaintiffs are individuals who a consular officer has proposed a waiver for, or whose eligibility for a waiver is being reviewed. (*E.g.*, Pls.' Mot. for Prelim. Inj., Exhs. 55, 57, 60, 64, 68, 72 (stating that waivers had been proposed or requested for the individuals); 56, 58, 59, 62 (stating that a consular officer was reviewing eligibility for a waiver).) Plaintiffs allege, however, that a group within the Department of State, known as the "PP 9645 Brain Trust," has "privately promulgated guidance on the waiver adjudication scheme that is inconsistent with" PP 9645. (Compl. ¶ 137.) Specifically, Plaintiffs assert that consular officers are required to seek the concurrence of the Visa Office and the consular manager. (Compl. ¶ 137; Pls.' Mot. for Prelim. Inj. at 9.) For example, the State Department's Q&As state: "[PP 9645] permits consular officers, with the concurrence of the visa chief . . . or consular section chief, and following any required administrative processing, to grant waivers on a case-by-case basis when the applicant demonstrates to the officer's satisfaction" that the three requirements of PP 9645 apply. (Pls.' Mot. for Prelim. Inj., Exh. 75 at 7.) Plaintiffs contend that this requirement is at odds with PP 9645, stripping away the discretion to grant waivers that was given only to consular offices and the CBP's Commissioner and his designees. (Compl. ¶ 137.)

Further, Plaintiffs assert that the PP 9645 Brain Trust is intentionally delaying waiver adjudications. Specifically, Plaintiffs point to a December 14, 2017 e-mail by Defendant Joel D. Nantais, a Passport and Visa Examiner with the State Department, which states: "Please be clear that the goal of this effort is not to create timely processing of waivers for any applicant who is ineligible under the proclamation. The goal is to as thoroughly and effectively screen and vet every affected applicant prior to waking [sic] a waiver determination." (Pls.' Mot. for Prelim. Inj., Exh. 95 at 6.)

As of March 31, 2019, more than 12,000 applicants have made a preliminary showing of personal hardship and national interest, and were awaiting a determination on whether their entry

3

would not pose a threat to national security and public safety. (Pls.' Mot. for Prelim. Inj., Exh. 89 at 3.) The State Department explained that until an automated enhanced screening and vetting process could be put into place, visa applicants "should undergo a post-interview agency security review to resolve whether their entry would not poste a threat to the national security or public safety." (*Id.*) Otherwise, "much of the enhanced screening and vetting process [wa]s manual." (*Id.*) In early July 2019, there were approximately 17,000 cases. (Pls.' Mot. for Prelim. Inj., Exh. 90 at 3.) The State Department, however, implemented a new enhanced automated screening and vetting process, which would "provide[] consular officers much more quickly with the information required to make most PP 9645 waiver determinations." (*Id.*) "[I]nitial evidence indicates that consular officers are now able to make most waiver decisions within a few days of the visa interview." (*Id.*) Further, through September 14, 2019, the State Department issued more than 7,500 visas pursuant to a waiver of PP 9645, and "anticipate[d] that a majority of pre-July 2019 waiver cases pending with the Department, most of which require some degree of manual review, should be completed within the next six months." (*The Department of State Meeting with the American Immigration Lawyers Association (AILA) – Committee's questions and the responses provided by the Department of State*, U.S. DEPARTMENT OF STATE, https://travel.state.gov/content/travel/en/News/visas-news/20191003_dept-of-state-meeting-with-aila.html (last visited Nov. 25, 2019). The new enhanced automated screening is being applied to ten of the Beneficiary Plaintiffs. (*See* Defs.' Opp'n, Exh. B, Dkt. No. 25.)

On September 15, 2019, Plaintiffs filed the instant complaint, asserting the following claims: (1) an Administrative Procedure Act ("APA") claim based on Defendants' failure to adjudicate visa waivers within a reasonable time; (2) an APA claim based on Defendants' failure to comply with PP 9645 by requiring the concurrence of consular managers for final waiver decisions; (3) a mandamus claim based on the unreasonable delay, the requirement of consular manager concurrence, and the development of inconsistent guidance for waivers; and (4) a procedural due process claim based on unreasonable delay and the requirement of consular manager concurrence. (Compl. at 40-49.) As of the filing of the complaint, Beneficiary Plaintiffs had waited an average of 501 days since their applications were refused pursuant to PP 9645.

4

1   (Compl. ¶ 12.)

2   On September 26, 2019, Plaintiffs filed this motion for injunctive relief, seeking a

3   mandatory injunction that Defendants adjudicate Beneficiary Plaintiffs' waiver requests within

4   fifteen days. Plaintiffs assert a likelihood of success on the APA claims only, not the mandamus

5   or due process claims. (*See* Pls.' Mot. for Prelim. Inj. at 18-19.) On November 7, 2019,

6   Defendants filed their opposition. (Defs.' Opp'n, Dkt. No. 25.) On November 14, 2019, Plaintiffs

7   filed their reply. (Pls.' Reply, Dkt. No. 30.)[2]

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 689-90 (2008) (citations omitted). Thus, "[a] plaintiff seeking a preliminary injunction must establish (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit applies a "sliding scale" approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* (internal quotation omitted). The moving party must, however, "demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Id.* (internal quotation omitted).

"A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (internal quotation and modification omitted). In contrast, "[a] mandatory injunction orders a responsible party to take action." *Id.* at 879 (internal quotation omitted). Thus, "[a] mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored. In general, mandatory injunctions are not granted unless extreme or very

---

[2] On November 13, 2019, Plaintiffs voluntarily dismissed the claims of several Plaintiffs, including those whose waivers had been granted since the filing of this case. (*See* Dkt. No. 29.)

5

1 serious damage will result and are not issued in doubtful cases or where the injury complained of
2 is capable of compensation in damages." *Id.* (internal quotations omitted).

## III. DISCUSSION

### A. Joinder

As an initial matter, Defendants argue that Plaintiffs are improperly joined and that "[a]ll Plaintiffs beyond the lead plaintiff family . . . should be severed before this case proceeds further." (Defs.' Opp'n at 8.) Federal Rule of Civil Procedure 20(a) "permits the joinder of plaintiffs in one action if: (1) the plaintiffs assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

In *Coughlin*, the Ninth Circuit found that the test for permissive joinder was not satisfied where the plaintiffs challenged delays in the adjudication of their immigration applications. 130 F.3d at 1349, 1350. First, the Ninth Circuit found there was no common transaction or occurrence. While "the basic connection among all the claims [wa]s the alleged procedural problem of delay . . . the mere allegation of general delay is not enough to create a common transaction or occurrence." *Id.* at 1350. Instead, the plaintiffs needed to "allege that their claims arose out of a systematic pattern of events" or "a pattern of policy or delay in dealing with all applications and/or petitions by the INS." *Id.* Second, there was no common issue of fact or law because at issue were different applications, petitions, and forms, each of which could require different legal standards that, in turn, required different time frames. *Id.* at 1351.

In contrast, the instant case goes beyond alleging general delay by challenging a common policy. Specifically, Plaintiffs challenge the implementation of PP 9645, specifically the designation of "authority and discretion over case-by-case waiver adjudication to people and departments other than individual consular officers . . . ." (Compl. ¶ 9.) Plaintiffs allege that such requirements are "contrary to PP 9645," and that this "waiver adjudication scheme . . . leads to the ongoing untimely and unfair processing of case-by-case waivers for Beneficiary Plaintiffs . . . ." (Compl. ¶¶ 10-11.) Further, the instant case involves the same waiver process, creating common questions of fact and law. Thus, Plaintiffs have satisfied the requirements for permissive joinder.

6

*See Darchini v. Pompeo*, SACV 19-1417 JVS (DFMx), Dkt. No. 42 ("*Darchini* Ord. Denying Prelim. Inj.") at 4-5 (C.D. Cal. Sept. 24, 2019) (finding that identical allegations of unlawful designation of authority and discretion satisfied the requirements for permissive joinder).

**B.     Preliminary Injunction**

    **i.     Likelihood of Success on the Merits**

        a.  APA Reviewability

The APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Thus, the APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

Defendants argue that PP 9645 is not subject to APA review. (Defs.' Opp'n at 11-13.) While "the APA does not expressly allow review of the President's actions," the Ninth Circuit has found that "under certain circumstances, Executive Orders, with specific statutory foundation, are treated as agency action and reviewed under the APA." *Franklin v. Massachusetts*, 505 U.S. 788. 801 (1992); *City of Carmel-by-the-Sea v. United States Dep't of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997). Thus, "an executive action or presidential proclamation may also be subject to judicial review under the APA and treated as agency action when the order or proclamation 'rests upon statute.'" *W. Watersheds Project v. Bureau of Land Mgmt.*, 629 F. Supp. 2d 951, 965 (D. Ariz. 2009) (quoting *Legal Aid Soc'y v. Brennan*, 608 F.2d 1319, 1330 n.15 (9th Cir. 1979)).

The Court previously found that because PP 9645 was issued pursuant to INA § 212(f), 8 U.S.C. §1182, it was subject to judicial review. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2408 (2018); *see also Jamal v. Pompeo*, CV 19-6967-JVS (DFMx), Dkt. No. 68 ("*Jamal* Ord. Denying Prelim. Inj.") at 6 (C.D. Cal. Nov. 19, 2019). Further, the instant case concerns the implementation of PP 9645, rather than its legality. *Hawaii v. Trump*, 878 F.3d 662, 680-81 (9th Cir. 2017) ("because these agencies have consummated their implementation of the Proclamation, from which legal consequences will flow, their actions are 'final' and therefore reviewable under the APA"), *rev'd and remanded on other grounds by Trump v. Hawaii*, 138 S. Ct. 2392; *see also Jamal* Ord. Denying Prelim. Inj. at 6.

Defendants distinguish *City of Carmel-by-the-Sea* by arguing that there, the challenged

executive orders "laid out detailed and exacting standards for the subject agencies to follow concerning floodplain and wetlands management." (Defs.' Opp'n at 12.) Thus, "there was 'law to apply' as the executive orders there 'set objective standards.'" (*Id.* (quoting *City of Carmel-by-the-Sea*, 123 F.3d at 1166.) Here, however, there are objective standards as to who has the discretion and authority to adjudicate waivers, which Plaintiffs assert are now being usurped by Defendants' implementation of PP 9645. Thus, the Court can review this APA claim. *See Darchini* Ord. Denying Prelim. Inj. at 6; *Jamal* Ord. Denying Prelim. Inj. at 6.

To the extent that Plaintiffs are arguing that their APA claim regarding timing is subject to APA review, however, the Court finds that Plaintiffs have not established reviewability. Plaintiffs point to no objective standard in PP 9645 that can be applied to determine what is a reasonable time. While Plaintiffs point to *Nine Iraqi Allies v. Kerry*, this case is distinguishable because there, the relevant statutes required that the government process applications within nine months. 168 F. Supp. 3d 268, 293 (D.D.C. 2016). Thus, when determining what was a reasonable time, the district court was able to find that the statutes "provide[d] just such a timetable or other indication of speed." *Id.* (internal quotation omitted). No such timing obligation exists in PP 9645, however, and thus the Court has no manageable standards to assess Defendants' compliance. *See Darchini* Ord. Denying Prelim. Inj. at 6 (distinguishing *Nine Iraqi Allies* "because there is no similar statutory directive here").

Accordingly, the Court finds that Plaintiffs' claim as to whether consular officers' discretion and authority to make individual waiver decisions is being unlawfully usurped is reviewable under the APA. The Court finds, however, that Plaintiffs have not established that their claim regarding the reasonable timing of such decisions is reviewable under the APA.

b. Consular Nonreviewability

Defendants argue that Plaintiffs are attempting to "short-circuit consular nonreviewability" via the APA . . . . (Defs.' Opp'n at 15.) "It has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review." *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008). Here, consular nonreviewability does not apply because Plaintiffs are not challenging the consular officer's decision, but the lack

thereof, as well as the procedures by which PP 9645 is being implemented. *See Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997) ("when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists"); *Darchini* Ord. Denying Prelim. Inj. at 7; *Jamal* Ord. Denying Prelim. Inj. at 7. Further, as Beneficiary Plaintiffs are still *waiting* for a decision by the consular officer, there is no decision to review and thus consular nonreviewability is not at issue.

The Government also argues that PP 9645 not only fails to impose a timing requirement, but does not require that "the waivers be adjudicated *at all* . . . ."[3] (Defs.' Opp'n at 14; *see also id.* at 16.) The Court disagrees. In finding that PP 9645 was legal, the Supreme Court relied in part on the existence of the waiver program, through which "consular officers **are** to consider in each admissibility determination whether the alien demonstrates that (1) denying entry would cause undue hardship; (2) entry would not pose a threat to public safety; and (3) entry would be in the interest of the United States." *Trump v. Hawaii*, 138 S. Ct. at 2422 (emphasis added); *see also Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1013 (N.D. Cal. 2019) ("The allowance for waivers in the Proclamation was an important reason why the five-justice majority upheld it as serving a legitimate national security interest."). To now argue that the waiver program requires no decision would be to render the waiver program illusory, negating one of the bases for finding that PP 9645 was legal in the first place. Further, as found in both *Darchini* and *Jamal*, the State Department's "Operational Q&As on PP. 9645" state that every applicant who is subject to PP 9645 but is otherwise eligible for a visa "**must** be considered for a waiver." *Darchini* Ord. Denying Prelim. Inj. at 7; *Jamal* Ord. Denying Prelim. Inj. at 7; *see also* Pls.' Mot. for Prelim. Inj., Exh. 76 at 8. Such mandatory language demonstrates a decision is required.

   c. Unreasonable Delay

On the merits, the Court finds that Plaintiffs have failed to show a likelihood of success on the merits as to whether the waiver decisions have been unreasonably delayed. Again, as discussed above, the Court finds that Plaintiffs have not shown that they can bring an APA claim

---

[3] At the hearing, Defendants conceded that it is not their legal position that they do not have to adjudicate the waiver requests.

based solely on the timing. Rather, Plaintiffs have established reviewability as to an APA claim based on the alleged policy depriving consular officers of the discretion and authority to issue waivers. Even if Plaintiffs succeed on this violation, however, Plaintiffs fail to connect this policy with any unreasonable delay. At most, Plaintiffs point to the e-mail by Mr. Nantais stating that "the goal of this effort is not to create timely processing of waivers for any applicant who is ineligible under the proclamation." (Pls.' Mot. for Prelim. Inj., Exh. 95 at 6.) This e-mail, however, is not proof of intentional delay, as the e-mail goes on to state: "The goal is to as thoroughly and effectively screen and vet every affected applicant prior to waking [sic] a waiver determination." Thus, at most the e-mail states that the priority is on vetting rather than timeliness. Nor is it clear that Mr. Nantais's e-mail is representative of a government policy; Mr. Nantais is not alleged to be a part of the PP 9645 Brain Trust, or to have any policy making capacity.

Even if the Court was to find that the challenged policy causes delay, Plaintiffs fail to establish that such delay is unreasonable. Plaintiffs urge the Court to apply the factors set out in *Telecommunications Research and Action Center v. FCC* ("*TRAC* factors") for determining unreasonable delay, which are:

> (1) The time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations omitted); *see also Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (applying TRAC factors in assessing whether relief under the APA was appropriate).

The first *TRAC* factor requires the application of a "rule of reason." In general, "[t]he reasonableness determination is a fact-specific inquiry," and "length of delay alone is not

10

dispositive." *Mugomoke v. Curda*, Civ. No. 2:10-cv-2166 KJM DAD, 2012 WL 113800, at *8 (E.D. Cal. Jan. 13, 2012) (citing *Gelfter v. Chertoff*, Case No. 06-cv-6724-WHA, 2007 WL 90238, at *2 (N.D. Cal. Mar. 22, 2007). Rather, courts must "look to the source of the delay-e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Qureshi v. Napolitano*, Case No. 11-cv-5814-YGR, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012). Here, the Court cannot say that the time taken by Defendants thus far is unreasonable. Indeed, courts in this district have recognized that "[t]errorist-related determinations involving immigration applicants are not made lightly and may be time-consuming." *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014).[4] Additionally, in finding that PP 9645 was lawful, the Supreme Court accepted (and this Court is bound by its ruling) PP 9645's "extensive findings describing how deficiencies in the practices of select foreign governments . . . deprive the Government of 'sufficient information to assess the risks those countries' nationals pose to the United States.'" *Trump v. Hawaii*, 138 S. Ct. at 2408 (quoting PP 9645 § 1(h)(i).) Thus, as Defendants explain, "[t]he vetting process may be more difficult and time consuming for the [Beneficiary Plaintiffs] because, as the Presidential Proclamation explains, Iran does not adequately provide public-safety and terrorism-related information." (Defs.' Opp'n at 19; *see also Darchini* Ord. Denying Prelim. Inj. at 8 ("The Court is persuaded by the Government's argument that this vetting process is more difficult and time consuming for Iranian nationals because, [as] the Presidential Proclamation explains, Iran does not adequately provide public-safety and terrorism-related information") (internal quotation omitted).)

In arguing that Defendants are able to complete the waiver determinations within fifteen days, Plaintiff argues that "Defendants have stated that waiver considerations can be completed in

---

[4] Further, as Defendants point out, courts in this Circuit have found that delays of up to four years for adjudication of immigration proceedings for United States-based residents were not reasonable. *See Islam*, 32 F. Supp. 3d at 1071 ("courts have generally found delays of four years or less not to be unreasonable"); *Dosouqi v. Heinauaer*, Case No. 12-cv-3946-PJH, 2013 WL 664150, at *2 (N.D. Cal. Feb. 22, 2013) (delay of three and one-half years not unreasonable); *Beyene v. Napolitano*, Case No. 12-cv-1149-WHA, 2012 WL 2911838, at *6 (N.D. Cal. July 13, 2012) ("courts evaluating the pace of I-485 application determinations that have been placed on hold due to terrorist-related inadmissibility findings have found delays approaching ten years to be reasonable. On the other hand, courts have found delays of two, three, and four years to be reasonable.").

11

'one business day.'" (Pls.' Mot. for Prelim. Inj. at 21.) The relevant e-mail is an automatic reply from the "Countries-of-concern-inquiries" e-mail, and states: "In urgent cases, a response from the Visa Office can be provided within one business day, provided that the Visa Office has all the information needed." (Pls.' Mot. for Prelim. Inj., Exh. 74 at 1.) The e-mail does not suggest that waiver considerations can in fact be completed in one business day; it only states that responses can be provided in one business day in urgent cases. It is not clear, however, that this e-mail address is used for waiver considerations only; notably, the State Department's Operating Q&As states that this e-mail is to be used "[i]f the applicant does not fit under one of the undue hardship and national interest waiver examples . . . but the interviewing consular officer and consular manager believe that the applicant meets the undue hardship and national interest requirements for the waiver for other reasons . . . ." (Pls.' Mot. for Prelim. Inj., Exh. 75 at 6.) The auto-reply also refers to "general inquiries," which suggests this e-mail address is used for many different functions, some of which may be capable of responses within one business day.

Plaintiffs also point to the Defendants' implementation of the enhanced, automated front-end screening for security checks, which greatly reduces the time necessary for adjudication. (Pls.' Mot. for Prelim. Inj. at 21-22.) While this appears to be true, it does not show that the delay in adjudication up to this point is unreasonable. The automated system was not implemented until July 2019, at which point there was already a backlog of approximately 17,000 waiver applications. It is not clear that the implementation of automated screening necessarily means Defendants can now complete the waiver determinations within fifteen days for Plaintiffs. Thus, the Court finds this factor weighs in favor of Defendants.

The second *TRAC* factor considers where there is a mandated timetable. No timetable exists in PP 9645. While Plaintiffs argue that the President "promised to create a 'robust' waiver program," and points again to the "one business day" e-mail, the Court finds that the plain language of PP 9645 creates no timing requirement. Thus, this factor is neutral.

Courts typically consider the third and fifth *TRAC* factors together, namely the dangers to human health and welfare as well as the nature of the interests prejudiced by the delay. *See Islam*, 32 F. Supp. 3d at 1073; *Beyene*, 2012 WL 2911838, at *7. Plaintiffs point to the hardships that

they are suffering due to family separation.  Defendants do not appear to dispute these factors, and the Court finds they weigh in favor of Plaintiffs.

The fourth *TRAC* factor considers the effect of expediting adjudication "on agency action of a higher or competing priority." *TRAC*, 750 F.2d at 80.  Plaintiffs argue that "the agency's competing priorities are a difficult metric to analyze because Defendants have abandoned all pretense of competing priorities, by prioritizing only a blanket preclusion of entry . . . ." (Pls.' Mot. for Prelim. Inj. at 24.)  The Court does not find this conclusory argument persuasive, particularly when waivers have in fact been granted to Plaintiffs in this case since its filing. (Defs.' Opp'n, Exh. B at 13, 40, 45 (visas issued to Plaintiffs Aryana, Shafeian, Rayatidamavandi, and Beykli.)  As Defendants point out, there are also competing priorities including the need for national security vetting and the thousands of other waiver applicants in line.  (Defs.' Opp'n at 22.)  In particular, "national security concerns constitute the stated purpose for the proclamation, and given that this purpose has been expressly approved by the Supreme Court, we must weigh this factor decisively in favor of Defendants." *Yavari v. Pompeo*, 2:19-cv-2524-SVW-JC, Dkt. No. 27 at 13 (citing *Trump v. Hawaii*, 138 S. Ct. at 2420).

The final *TRAC* factor concerns bad faith.  Plaintiffs state that at this juncture, they are not alleging any impropriety.  (Pls.' Mot. for Prelim. Inj. at 24.)  A court "need not find that an agency acted in bad faith to conclude unreasonable delay." *Qureshi*, 2012 WL 2503828, at *7 (citing *Indep. Mining Co.*, 105 F.3d at 510).  Thus, this factor weighs slightly in favor of Defendants.

Considering the factors together, the Court finds that Plaintiffs have not established a likelihood of success that Defendants have subjected them to unreasonable delay.  In particular, the rule of reason and competing agency priorities weigh strongly against such a finding.  *See Darchini* Ord. Denying Prelim. Inj. at 7-9 (finding that *TRAC* factors weigh against finding unreasonable delay based on identical facts); *Jamal* Ord. Denying Prelim. Inj. at 7-9 (same).

### ii. Remaining Preliminary Injunction Factors

Because the Court finds that Plaintiffs have not established a likelihood of success, a preliminary injunction is not appropriate.  This is particularly the case as plaintiffs seek a mandatory injunction, rather than a prohibitory injunction, which is especially disfavored by the

courts. *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879.

That said, the Court acknowledges that Plaintiffs have shown that irreparable injury is likely absent an injunction. Indeed, Plaintiffs have already suffered significantly from the family trauma. For example, Plaintiff Khalighi seeks to come to the United States to visit her mother, a U.S. citizen, who is 90 years and suffers from dementia, Parkinson's disease, and poor health. (Sedghi Decl. ¶ 5.) Plaintiff Khalighi had her consular interview on January 2, 2018, and was told it went well and that she should allow three weeks to three months for administrative processing. (Sedghi Decl. ¶¶ 9, 12.) Plaintiff Khalighi, however, is still waiting for a visa determination. In the meantime, Plaintiff Khalighi's mother suffers emotionally; on days when she has mental clarity, she remembers that her daughter cannot come and cries incessantly for her. (Sedghi Decl. ¶ 15.) Plaintiff Khalighi would not only be able to help take care of her mother, but would benefit her mother emotionally. (Sedghi Decl. ¶¶ 23, 25.)

Defendants suggest that such suffering will not get worse because it has existed for a long period of time. (Defs.' Opp'n at 23-24.) This argument ignores that the suffering continues so long as the waiver adjudications do not occur, particularly for those who are ultimately found to satisfy all the waiver requirements. Because Plaintiffs have not "demonstrate[d] a fair chance of success on the merits, or questions serious enough to require litigation," the Court finds that even a stronger showing of irreparable injury does not offset the lack of the first requirement.

Additionally, the Court cannot find that the balance of equities tips in Plaintiffs' favor or that the public interest favors a preliminary injunction. While Plaintiffs suggest that requiring adjudication within fifteen days "minimizes the burden on the Defendants, while supporting the public interest," Plaintiffs provide no explanation for this conclusion. Thus, like the district court in *Darchini and* Jamal, "[t]he Court is not convinced that requiring the Government to act on Plaintiffs' waiver applications within 15 days would be a minimal burden, given the national security and public safety concerns at issue." *Darchini* Ord. Denying Prelim. Inj. at 10; *Jamal* Ord. Denying Prelim. Inj. at 10.

Accordingly, Plaintiffs have not satisfied the preliminary injunction requirements.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' motion for a preliminary injunction. Because this order addresses the bulk of the arguments in Defendants' pending motion to dismiss, such as whether there is a reviewable APA claim and the applicability of consular nonreviewability, the Court TERMINATES the motion to dismiss without prejudice. Defendants may file a new motion to dismiss, taking into account this order.

IT IS SO ORDERED.

Dated: December 5, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge