UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SONA NAJAFI, et al.,

               Plaintiffs,

     v.

MICHAEL R. POMPEO, et al.,

               Defendants.

Case No.  19-cv-05782-KAW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 63

On March 26, 2020, Plaintiffs filed the operative complaint, "challeng[ing] Defendants' standards, policies, and procedures implementing the waiver provisions (§3(c)) of Presidential Proclamation 9645, Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats."  (First Amended Compl. ("FAC") ¶ 1, Dkt. No. 61.)

Pending before the Court is Defendants' motion to dismiss.  (Defs.' Mot. to Dismiss, Dkt. No. 63.)  Pursuant to Civil Local Rule 7-1(b) and General Order 72-3, the Court deems the matter suitable for disposition without a hearing.  Having considered the parties' filings and the relevant legal authority, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## I.     BACKGROUND

### A.     Factual Background

Plaintiffs are U.S. citizens and lawful permanent residents ("Petitioner Plaintiffs") and their Iranian national relatives who are visa applicants ("Beneficiary Plaintiffs").  (FAC ¶ 4.) Beneficiary Plaintiffs fulfilled the requirements to obtain family-based immigrant visas, but their applications were denied pursuant to Presidential Proclamation 9645 ("PP 9645").  (FAC ¶ 6.)

United States District Court
Northern District of California

PP 9645 prohibits the entry of immigrants and non-immigrants from Iran and other countries.  (PP 9645 § 2(b).)  PP 9645, however, provides: "a consular officer, or the Commissioner, United States Custom and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited . . . ."  *Id.* § 3(c).  A waiver may be granted if the "foreign national demonstrates to the consular officer's or CBP official's satisfaction that: (A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest."  *Id.* § 3(c)(ii).

Plaintiffs allege that they have suffered harm, including but not limited to emotional distress from a failure to decide their waiver applications, because Defendants have "crafted a waiver adjudication scheme that, in its application, leads to the ongoing untimely and unfair processing of case-by-case waivers for Beneficiary Plaintiffs . . . ."  (FAC ¶¶ 8, 27, 38.)  Specifically, Plaintiffs assert that consular officers have no discretion to decide the national security prong.  (FAC ¶ 81.)  Consular officers are instead directed to submit requests for security review to offices in Washington, where non-consular officers and third-party contractors decide the national security prong.  (FAC ¶¶ 109, 120.)  Per the declaration of former consular officers, "following submission of an application to offices in Washington for 'administrative processing' on national security grounds by a consular official and after an indefinite and often extended period of time, a consular official receives a 'yes/no' determination regarding an applicant's eligibility to receive a visa on national security grounds."  (FAC ¶ 109.)  Consular officials are given no knowledge as to which government officials reviewed the case and the standards used.  (FAC ¶ 110.)  Further, "individual consular officers cannot request additional information or appeal a security determination that they believe to be improper."  (FAC ¶ 110.)

Plaintiffs further allege that the non-consular officers – including consular managers, visa chiefs, consular section chiefs, and third-party contractor Quality Support, Inc. – "are not adjudicating PP 9645 waivers as a matter of course."  (FAC ¶¶ 145-148, 152.)  Thus, the designation to non-consular officers to adjudicate the national security prong "is responsible for

the unlawful withholding and/or unreasonable delays of waiver adjudications."  (FAC ¶ 162.)

Absent this alleged designation, "consular officers would have been free to adjudicate waivers,

and in fact, would have adjudicated waivers."  (FAC ¶ 162.)

### B.   Procedural Background

On September 15, 2019, Plaintiffs filed the instant case on behalf of twenty-four

Beneficiary Plaintiffs and their respective twenty families.  (Compl. ¶ 2, Dkt. No. 1.)  Plaintiffs

asserted: (1) an Administrative Procedure Act ("APA") claim based on Defendants' failure to

adjudicate waivers within a reasonable time, (2) an APA claim based on Defendants' designation

of consular officer authority, (3) a mandamus claim, and (4) a procedural due process claim.

(Compl. at 40-49, Dkt. No. 1.)

On September 26, 2019, Plaintiffs filed a motion for a preliminary injunction, seeking a

mandatory injunction that Defendants adjudicate Beneficiary Plaintiffs' waiver requests within

fifteen days.  (Dkt. No. 9.)  Plaintiffs' claims were based on the APA claims only.  (*See id.* at 18-

19.)  On December 5, 2019, the Court denied Plaintiffs' motion.  (Dkt. No. 41 at 1.)  First, the

Court found that Plaintiffs had not established that their claim regarding timing was reviewable

under the APA.  (*Id.* at 8.)  Second, the Court found that while Plaintiffs' claim based on the

usurpation of consular authority was reviewable, Plaintiffs failed to connect that policy to any

unreasonable delay.  (*Id.* at 10.)  Further, Plaintiffs failed to establish that the delay was legally

unreasonable pursuant to the factors set out in *Telecommunications Research and Action Center v.*

*FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC* factors").  (*Id.* at 10-13.)

On January 16, 2020, Defendants filed a motion to dismiss the complaint.  (Dkt. No. 48.)

On March 5, 2020, the Court granted Defendants' motion.  (Dismissal Ord., Dkt. No. 60.)  The

Court dismissed Plaintiffs' claim regarding timing with prejudice, explaining that Plaintiffs failed

to identify an objective standard in PP 9645, as required by *City of Carmel-by-the-Sea v. United*

*States Dep't of Transportation*, 123 F.3d 1142, 1166 (9th Cir. 1997).  (*Id.* at 4-6.)  The Court

dismissed Plaintiffs' usurpation claim without prejudice, finding that Plaintiffs failed to "plead an

injury caused by the usurpation of consular officer authority in order to have standing to bring this

claim."  (*Id.* at 6) Finally, the Court dismissed Plaintiffs' procedural due process claim because

United States District Court
Northern District of California

1  Plaintiffs failed to identify a protected liberty or property interest.  (*Id.* at 7-8.)

2  On March 26, 2020, Plaintiffs filed the operative complaint on behalf of seven families,

3  four of whom are still awaiting a decision on their waiver applications.  (FAC ¶ 4.)[1]  The

4  remaining Beneficiary Plaintiffs' waiver applications have been adjudicated.  (*See* FAC at 34.)

5  Plaintiffs bring: (1) an APA claim based on the alleged usurpation of consular officer authority

6  and delegation of waiver decisions to non-consular officers, (2) a mandamus claim, and (3) a

7  procedural due process claim.  (FAC at 39-49.)  On May 1, 2020, Defendants filed the instant

8  motion to dismiss.  On May 9, 2020, Plaintiffs filed their opposition.  (Pls.' Opp'n, Dkt. No. 64.)

9  On May 22, 2020, Defendants filed their reply.  (Defs.' Reply, Dkt. No. 65.)

## II.    LEGAL STANDARD

### A.    12(b)(1) Motion to Dismiss

12  A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

13  to Federal Rule of Civil Procedure 12(b)(1).  A Rule 12(b)(1) motion tests whether a complaint

14  alleges grounds for federal subject matter jurisdiction.  A motion to dismiss for lack of subject

15  matter jurisdiction will be granted if the complaint, on its face, fails to allege facts sufficient to

16  establish subject matter jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036,

17  1039 n.2 (9th Cir. 2003).  In considering a Rule 12(b)(1) motion, the Court "is not restricted to the

18  face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve

19  factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d

20  558, 560 (9th Cir. 1988).  Once a party has moved to dismiss for lack of subject matter jurisdiction

21  under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction.

22  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B.    12(b)(6) Motion to Dismiss

24  Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based

25  on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule

26  12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250

[1] All other former Beneficiary Plaintiffs have had their waivers adjudicated, and their claims voluntarily dismissed.  (*See* Dkt. Nos. 29, 43.)

United States District Court
Northern District of California

F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III.   DISCUSSION

#### C.   Standing

Defendants argue that Plaintiffs' APA and mandamus claims should be dismissed because

United States District Court
Northern District of California

1   Plaintiffs lack standing.  (Defs.' Mot. to Dismiss at 13.)  Generally, a plaintiff must have standing

2   under Article III of the United States Constitution to pursue relief in federal court.  Article III

3   standing requires the demonstration of three elements: (1) the plaintiff suffered an "injury in fact"

4   that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the

5   injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed

6   to merely speculative, that the injury will be redressed by a favorable decision.  *Lujan v.*

7   *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992.)  Absent this showing, the action must be

8   dismissed.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998).

9           **i.    Injury-in-Fact**

10          First, Defendants contend that Plaintiffs have not alleged an injury beyond delay in

11  processing Plaintiffs' waiver applications.  (Defs.' Mot. to Dismiss at 15.)  Defendants suggest

12  that the Court previously found that delay does not constitute injury for standing purposes.  (*Id.*)

13          The Court did not previously find that Plaintiffs had not suffered sufficient injury based on

14  the delay in adjudicating Plaintiffs' waiver application.  Rather, the Court found that Plaintiffs

15  failed to show that this injury was "caused by the usurpation of consular officer authority . . . ."

16  (Dismissal Ord. at 6.)  The delay in adjudicating Plaintiffs' waiver applications has caused

17  significant injuries to Plaintiffs; for example, Beneficiary Plaintiff Seyed Masoud Shameli

18  currently resides in a city in Iran that is likely to be targeted if war was to break out.  (FAC ¶ 37.)

19  Petitioner Plaintiff Reza Shameli, his father, suffers from stress, anxiety, insomnia, and depression

20  as a result of Beneficiary Plaintiff Seyed Masoud Shameli being stuck in Iran, a situation that has

21  allegedly been extended due to Defendants' alleged unlawful policies.  (FAC ¶ 38.)  Such injuries

22  are sufficient to establish the first element of standing.  *See Krottner v. Starbucks Corp.*, 628 F.3d

23  1139, 1142 (9th Cir. 2010) (finding allegation of "generalized anxiety and stress" from increased

24  risk of identity theft as a result of a laptop theft was sufficient to confer standing).

25          In the alternative, Defendants suggest that Plaintiffs' "psychological aversion to what

26  Plaintiffs view as the Government violating the law . .  is categorically insufficient to support

27  standing," relying on *Valley Forge Christian College v. Americans United for Separation of*

28  *Church & State*, 454 U.S. 464 (1982).  (Defs.' Mot. to Dismiss at 15.)  There, the Supreme Court

1   rejected the argument that standing could be "predicated on the right, possessed by every citizen,

2   to require that the Government be administered according to law." *Id.* at 482-83 (internal

3   quotation omitted).  In other words, a plaintiff must "allege[] something more than the generalized

4   interest of all citizens in constitutional governance." *Id.* at 483 (internal quotation omitted).  Here,

5   however, Plaintiff's injury is not merely an academic interest in having the government comply

6   with the law, but real-life consequences of non-compliance specific to their individual interests.

7   Without an adjudication of the waivers, Plaintiffs will continue to be separated from loved ones,

8   which in turn causes the psychological harm complained of in the complaint.

9         **ii.   Traceability**

10        Second, Defendants argue that Plaintiffs have not established that the delay in adjudicating

11   the waiver applications (and thus the resulting psychological distress) is traceable to Defendants'

12   alleged policy of usurping consular officer authority.  (Defs.' Mot. to Dismiss at 16.)  The Court

13   finds that Plaintiffs have sufficiently alleged that the alleged usurpation of consular officer

14   authority results in the delays.

15        Specifically, Plaintiffs allege that consular officers already found that an applicant is

16   eligible for a waiver before they are required to send notice to Washington to make a decision

17   whether to grant or deny the waiver.  (FAC ¶ 105, 113.)  Once the consular officer submits an

18   applicant's case for security review in Washington, "consular officers lose visibility into

19   evaluations of an applicant's case." (FAC ¶ 109.)  Instead, non-consular officers, including third-

20   party contractors, make a determination on the national security and public safety prong.  (FAC ¶

21   120.)  Those non-consular officers, in turn, "are not adjudicating PP 9645 waivers as a matter of

22   course," thus directly causing the delay.  (FAC ¶ 152; *see also* FAC ¶ 5 ("the designated non-

23   consular officers do not systematically adjudicate PP 9645 waivers, but arbitrarily withhold and/or

24   unreasonably delay them").)  Further, consular officers cannot request additional information or

25   appeal a security determination they believe is improper.  (FAC ¶ 110.)  Moreover, "absent these

26   unlawful acts, consular officers would have been free to adjudicate waivers, and in fact, would

27   have adjudicated waivers." (FAC ¶ 162.)  In short, Plaintiffs have adequately alleged that the

28   usurpation causes the delay because absent the policy, consular officers would make the waiver

1

2

3

decision.  Instead, non-consular officers are required to approve the waiver, and those non-consular officers delay making decisions.  At the pleading stage, such allegations are sufficient to establish that the complained of policy is traceable to the alleged harms.

4

5

6

7

8

9

10

11

Defendants argue that waiver applications have been processed for many people, and therefore the delay suffered by Plaintiffs in this case must be caused by other reasons, such as the particular circumstances and histories of the remaining Beneficiary Plaintiffs.  (Defs.' Mot. to Dismiss at 16-17.)  Such arguments are speculative, and Defendants present no evidence that the delays were in fact caused by other circumstances.  (*See id.* at 17.)  Further, although the waiver applications of other individuals were ultimately processed, that is a distinct matter from whether the adjudication was delayed because of an illegal process.  Accordingly, the Court finds Plaintiffs have established the traceability element of standing.

12

### iii.    Redressability

13

14

15

16

17

18

19

20

21

22

23

24

25

Finally, Defendants argue that several Plaintiffs lack standing because their waiver applications have already been addressed.  (Defs.' Mot. to Dismiss at 17.)  Specifically, eight Beneficiary Plaintiffs have had their waiver applications adjudicated; thus, their claims are not redressable by requiring that Defendants desist in their alleged policy of usurping consular authority.  (*Id.*; *see also* FAC at 34.)  Plaintiffs do not respond to this argument.  The Court agrees that even if the Court was to find that the alleged usurpation policy exists and has caused Plaintiffs' harms, these Plaintiffs would not benefit from such a decision because their applications have already been decided.  Therefore, the Court DISMISSES the claims of Petitioner Plaintiff Sona Najafi, Beneficiary Plaintiffs Mehdi Najafi and Souri Zamat Kesh Komleh, Beneficiary Plaintiff Foroogh Kazemi, Petitioner Plaintiff Matthew Taylor, Beneficiary Plaintiff Sima Behbahani, Petitioner Plaintiffs Seyed Mohammad and Reza Demeneh, and Beneficiary Plaintiffs Seyed Mohammadmehdi Abdollahi Demeneh, Firouzeh Abdollahi, Armaghan Sadat Abdollahi Demeneh, and Seyed Arsalan Abdollahidemeneh for lack of standing.

26

27

28

In the reply, Defendants also argue that the harms are not redressable because the consular officers are awaiting responses from third-parties that are not subject to Defendants' control.  (Defs.' Reply at 7.)  The Court, however, can enjoin Defendants from relying on those third-

United States District Court
Northern District of California

parties in the first place if the reliance on their decisions are illegal.  Thus, it is not apparent that Plaintiffs' claims are not redressable.  Accordingly, the Court finds that as to Beneficiary Plaintiffs who have not had their waiver applications adjudicated and the corresponding Petitioner Plaintiffs, the claim is redressable and those Plaintiffs have standing.

### D.  Failure to State an APA or Mandamus Claim

Next, Defendants argue that Plaintiffs' APA and mandamus claims must be dismissed because they fail to state a claim as a matter of law.  (Defs.' Mot. to Dismiss at 17.)  Specifically, Defendants argue that Plaintiffs' have failed to show unreasonable delay as a matter of law, and that Plaintiffs do not allege any unlawful conduct.  (*Id.* at 17, 21.)

#### i.  Unlawful Delay

Defendants again argue that the delay suffered by Plaintiffs is not unreasonable as a matter of law.  (Defs.' Mot. to Dismiss at 17-18.)  The problem, however, is that Plaintiffs are no longer alleging that the delay itself is, as a matter of law, unlawful.  Instead, Plaintiffs are challenging the *policy* of usurping the authority of consular officers.  As the Court previously explained, "Plaintiffs need not plead a connection between the alleged usurpation of consular authority and delay in order to establish that Defendants' implementation of PP 9645 is unlawful."  (Dismissal Ord. at 6.)  Rather, delay was necessary to establishing an injury adequate for standing purposes; it is *not* necessary to establishing that the policy of usurping the authority of consular officers is itself illegal. The policy can still be illegal even if it does not cause any delay.  Thus, whether the delay is unreasonable as a matter of law is not relevant to the claim before the Court, which is that Defendants have unlawfully implemented PP 9645.

#### ii.  Unlawful Conduct

Defendants also challenge whether the complained of conduct is actually unlawful.  (Defs.' Mot. to Dismiss at 21.)  Defendants contend that PP 9645 does not define a "consular officer," and that the term "does not prohibit any management by experienced consular officers or input from supervisory consular officers or national-security experts" such as those in government intelligence agencies.  (*Id.* at 21-22.)  Further, PP 9645 does not prevent consular officers from consulting with more knowledgeable individuals.  (*Id.* at 21-22.)  Defendants also argue that the

third-party contractors do not actually make the decisions on behalf of the consular officers.  (*Id.* at 22.)

Defendants' arguments are a challenge on the merits.  At the pleading stage, however, the Court must accept as true the factual allegations of the complaint.  Here, Plaintiffs have alleged that consular officers are prevented from making waiver adjudications and point to consular officer declarations stating that they cannot even request additional information or appeal a security determination that they believe to be improper.  (FAC ¶¶ 105, 109-11, 118.)  This is quite different from consular officers merely "consulting" or obtaining "input" from supervisory consular officers or national security experts.  Likewise, Plaintiffs have alleged that third-party contractors – who Defendants do not suggest would qualify as consular officers – make the waiver decisions.  (FAC ¶¶ 120, 127, 148.)  While Plaintiffs' allegations may ultimately be disproven by discovery, at the pleading stage, such allegations are sufficient to establish that consular officer authority is being unlawfully usurped by third-party contractors, who then make the waiver decisions.

### E.   Due Process Claim

Finally, Defendants argue that Plaintiffs' due process claims must be dismissed.  The Court previously found that Plaintiffs failed to identify a protected liberty or property interest.  (Dismissal Ord. at 7-8.)  Specifically, the Court explained that allegations of "infringement of fundamental rights to property, to life, to family integrity and security, and to freedom from discrimination with respect to their fundamental rights" was too conclusory to state a plausible claim.  (Dismissal Ord. at 8; *see also Motaghedi v. Pompeo*, 436 F. Supp. 3d 1345, 1366 (E.D. Cal. 2020) (rejecting identical allegations).  The Court also explained that with respect to "family integrity and security," the Ninth Circuit had "found that this right does not create a fundamental right to reside in the United States simply because other members of his family are citizens or lawful permanent residents."  (*Id.* (internal quotation omitted); *see also Emami v. Nielsen*, 365 F. Supp. 3d 1009, 1022 (N.D. Cal. 2019) (finding that even if there was a right to the integrity of the family unit, "it would not amount to a right of entry for foreign nationals, nor to an unfettered right to reside in the United States with family members who are foreign nationals").)  Finally, as

to Plaintiffs' argument that they had spent significant money, the Court explained that Plaintiffs' "cited no authority in support that this would support a procedural due process claim." (*Id.*)

The Court agrees that the due process claim must be dismissed. Plaintiffs admit that "the Procedural Due Process allegations are the same in the FAC as the original complaint," but argue that they are adequate because they are on behalf of Petitioner Plaintiffs only. (Pl.'s Opp'n at 24.) The Court, however, dismissed the due process claims as to *all* Plaintiffs because Plaintiffs had failed to adequately identify a protected liberty or property interest, and explained why the identified interests were too vague or insufficient. (Dismissal Ord. at 7-8.) That reasoning applied to Petitioner Plaintiffs; otherwise, the Court would not have dismissed the due process claim as to those individuals.

As Plaintiffs do not suggest they could identify a cognizable liberty or property interest, Plaintiffs' due process claim is DISMISSED without leave to amend.

### IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss the due process claim. The Court also GRANTS Defendants' motion to dismiss the claims brought by Beneficiary Plaintiffs whose waiver applications have been adjudicated and their Petitioner Plaintiffs[2] for lack of standing. The Court DENIES Defendants' motion to dismiss the APA and mandamus claims.

The Court sets the initial case management conference for **October 6, 2020** at 1:30 p.m.

IT IS SO ORDERED.

Dated: September 14, 2020

KANDIS A. WESTMORE
United States Magistrate Judge

---

[2] With the exception of Petitioner Plaintiff Kazemimood, as her father, Beneficiary Plaintiff Mohabat Kazemi, still has a pending waiver application. (FAC ¶ 47.)

11